UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

**SCOTT DOUGLAS NEWLAND,**

    **Plaintiff,**

v.                                              Case No. 14-2134

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

    **Defendant.**

REPORT AND RECOMMENDATION

Plaintiff Scott Douglass Newland seeks review under 42 U.S.C. § 405(g) of the Social Security Administration's denial of his applications for disability insurance benefits and supplemental security income. The parties have filed cross motions for summary judgment. For the reasons explained below, the Court recommends that Plaintiff's Motion for Summary Judgment **(#14)** be **DENIED**, Defendant's Motion for Summary Judgment **(#17)** be **GRANTED**, and that the decision to deny benefits be affirmed.

I.   Background

On July 29, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. On August 18, 2010, Plaintiff filed a Title XVI application for supplementary security income. In both applications, Plaintiff alleged disability beginning January 1, 2010. Plaintiff's claims were denied initially on February 1, 2011, and upon reconsideration on June 9, 2011. Plaintiff, represented by counsel, appeared and testified at a video hearing before an Administrative Law Judge (ALJ), during which the ALJ heard testimony from Plaintiff, and Bob Hammond, an impartial vocation expert (VE).

1

On February 7, 2013, the ALJ issued an unfavorable decision. The ALJ found that Plaintiff has the severe impairments of "degenerative disc disease post surgery, right shoulder subacromial impingement, right epidcondylitis, and affective disorder secondary to general medical condition (20 CFR §§ 404.1520(c) and 416.920(c))." (R. 15.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (R. 15.) Additionally, the ALJ found that Plaintiff has the residual function capacity (RFC) to "perform sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a). Additionally, he is capable of no more than occasional climbing, balancing, stooping, kneeling, crouching, and/or crawling. He can perform overhead reaching with the right upper extremity no more than occasionally. He can handle or finger with the right upper extremity no more than frequently. He is capable of performing no more than simple, routine and repetitive tasks." (R. 17.)

The ALJ found that Plaintiff is unable to perform his past relevant work as a salesman, but that there are jobs that exist in significant numbers in the national economy which Plaintiff can perform. (R. 29-30). On appeal, Plaintiff argues that 1) the ALJ erred in omitting evidence of impairments and considering the opinion evidence in determining Plaintiff's RFC; and 2) the ALJ erred by failing to assure that the VE's testimony was consistent with the Dictionary of Occupational Titles (DOT).

II.   **Standard of Review**

In reviewing the ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

401 (1971). Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Importantly, in order for the Court to evaluate the ALJ's analysis, the ALJ must build a "logical bridge from the evidence to his conclusion." *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

### III. Discussion

#### a. RFC

Plaintiff argues that the ALJ erred in evaluating the opinion evidence and omitted evidence of impairments that reduced Plaintiff's RFC.

##### i. Ability to work a full workday or workweek

First, Plaintiff argues that the ALJ should have included a limitation on Plaintiff's ability to work a full workday or workweek. During the hearing, the ALJ gave the VE various hypotheticals which he stated "may apply" in Plaintiff's case. In one of the hypotheticals, the individual could reasonably be expected to be off task 20 percent of the time. The VE testified that this limitation would eliminate all work. The ALJ did not include this limitation in Plaintiff's RFC.

Plaintiff cites a few medical opinions from the record that would support this limitation. Drs. Hudspeth and Lanier are State agency physicians who opined that Plaintiff had moderate limitations in several areas including his ability 1) to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and 2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 90, 102, 117-18, 131-32). Plaintiff also notes that on May 5, 2011, Dr. MacGregor opined that Plaintiff should not work more than 20 hours a week. (R. 615.)

The ALJ considered the opinions of Drs. MacGregor, Hudspeth, and Lanier in detail, and spent more than 11 pages examining and reviewing the medical history and opinions on record. The ALJ did not reject Drs. Hudspeth and Lanier's findings. Instead, the ALJ adopted their findings and found that Plaintiff had moderate

limitations in concentration, persistence, and pace. The ALJ also noted that Drs. Hudspeth and Lanier opined that Plaintiff was capable of sustaining simple repetitive tasks at least. (R. 131). The ALJ then accounted for the limitations described by Drs. Hudspeth and Lanier by limiting Plaintiff to "no more than simple, routine and repetitive tasks" in his RFC.

With regards to Dr. MacGregor, the ALJ considered the health status form filled out on May 5, 2011, where Dr. MacGregor limited Plaintiff to working no more than 20 hours per week. (R. 615.) However, the ALJ identified several pieces of evidence that contradict the 20 hour per week limitation. (R. 26.) First, Plaintiff was working 25 hours per week prior to his surgery and was reasonably expected to increase his work ability after surgery. Next, just one week before the health status form dated May 5, 2011, Dr. MacGregor released Plaintiff to return to work without restriction. (R. 617.) Additionally, the ALJ noted that at the time of the May 5, 2011, form, Plaintiff was attempting to wean himself off of pain medication and was suffering from increased pain.

Plaintiff also argues that the ALJ's RFC determination does not reflect the findings made by Dr. Atluri. Dr. Atluri found that Plaintiff suffered from severe anxiety and depression and had a significant problem with his neck and lower lumbar area. (R. 642.) However, Plaintiff does not point to anything in Dr. Atulri's opinion that justifies a limitation greater than what the ALJ prescribed in his RFC.

On appeal, the Court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F. 3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F. 3d 863, 869 (7th Cir. 2000). Here, Plaintiff asks the Court to reweigh the medical evidence presented. The ALJ thoroughly considered the evidence of record and sufficiently articulated his reasonable assessment of Drs. MacGregor, Hudspeth, Lanier, and Atluri's opinions. Plaintiff has not shown that the ALJ erred in failing to limit Plaintiff's ability to complete a full workday or workweek.

    ii.  Other Evidence of Impairments

Second, Plaintiff argues that the ALJ failed to account for other limitations that eroded Plaintiff's RFC including 1) Plaintiff's decline in his ability to handle weight and perform exercises as shown in his work conditioning program; and 2) Plaintiff's limited concentration and sleepiness.

Plaintiff argues that his records reveal a decline in ability to lift weights and perform exercises, showing that Plaintiff did not progress after his surgery. Plaintiff points to medical records showing that he was capable of lifting weights up to 20 pounds in earlier visits, but then was only able to lift 15-20 pounds after the surgery. Plaintiff relies on physical therapy notes dated February 4, 2011, to show that he was capable of only lifting 15-20 pounds, rather than the 20 pounds he previously lifted. Physical therapy notes dated only one week prior, on January 28, 2011, however, show that Plaintiff was lifting 20 pounds at the time. Plaintiff also notes that he was only able to complete one back extension exercise, where before he could complete up to ten back extension exercises. Similarly, while Plaintiff completed only one back extension the week of February 4, 2011, he completed 10 just one week earlier. There was no evidence of injury or medical change in this one week period and the records do not reveal the decline that Plaintiff alleges.

Plaintiff also argues that the ALJ failed to account for Plaintiff's limited concentration and sleepiness. The only medical records Plaintiff cites in support of this position are those of Drs. Hudspeth and Lanier, each of whom only found a moderate limitation related to Plaintiff's ability to concentrate and carry out short and simple instructions. Further, as Plaintiff recognizes, the ALJ limited Plaintiff to no more than simple, routine and repetitive tasks in order to compensate for these limitations. Plaintiff has not shown evidence of further limitations needed.

b.  **Vocational Expert**

Plaintiff argues that the ALJ failed to assure that the VE's testimony was consistent with the DOT. Contrary to Plaintiff's argument, the VE included the DOT position numbers for each job that he recommended. The use of DOT position numbers shows that the VE consulted the DOT when suggesting positions.

Plaintiff also argues that the jobs identified by the VE did not comply with the ALJ's limitation of jobs requiring no more than simple, routine, or repetitive tasks. During the hearing, the ALJ specifically included this limitation in the hypotheticals presented the VE. (R. 74-80.) Further, the VE indicated that he was limiting the recommended positions to those with a Specified Vocational Preparation Level (SVP) of two in order to account for the limitation of simple, routine, or repetitive tasks. (R. 75.) Positions with an SVP of two include unskilled work which "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). By restricting positions to those with an SVP of 2, the VE accounted for the prescribed limitations and the ALJ reasonably relied on the VE's testimony.

### IV.     Conclusion

For these reasons, the Court recommends that Plaintiff's Motion for Summary Judgment **(#14)** be **DENIED**, Defendant's Motion for Summary Judgment **(#17)** be **GRANTED**, and that the decision to deny benefits be affirmed. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 4th day of November, 2015.

   s/DAVID G. BERNTHAL   
UNITED STATES MAGISTRATE JUDGE
